## JOHN M. PEARSON ET AL.

### v.

## CHRISTIAN ZEHR.

*Trespass—Contagious and Infectious Diseases—Killing of Horses by Live Stock Commissioners—Evidence—Experts—Instructions—Damages.*

1. In an action of trespass brought against live stock commissioners for entering upon private premises and killing horses, said to be afflicted with glanders, und r the act of June, 1885, this court holds that the court below

erred in admitting evidence as to the symptoms observed years before, of
other horses supposed to have been afflicted with the same disease.

2. As a foundation for the introduction of evidence in such cases, it
must first be shown that the witness has knowledge of the disease in ques-
tion, its symptoms, character and results, after which he may give his con-
clusion and opinion based upon his experience.

3. In the case presented, it is held that damages given in the sum
of $2,100 are excessive, in view of the fact that the property destroyed was
only valued at $800.

· [Opinion filed February 21, 1889].

APPEAL from the Circuit· Court of Tazewell County; the
Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. PALMERS & SHUTT, for appellants.

Messrs. B. S. PRETTYMAN and W. R. CURRAN, for appellee.

CONGER, J. Appellee brought an action of trespass *quare
clausum fregit* against appellants for breaking and entering
his close with force and arms and killing certain horses and
destroying certain harness of appellee and recovered a judg-
ment for $2,100.

On the 13th of July, 1885, the governor appointed appel-
lants John M. Pearson and Hiram McChesney, together with
one D. W. Smith, live stock commissioners, in accordance with
the provisions of the act approved June 27, 1885, entitled;
" An act to revise the law in relation to the suppression and
prevention of the spread of contagious and infectious diseases
among domestic animals." They at once entered upon· the
.discharge of their duties, and organized the board by the
selection of John M. Pearson as chairman, and Clarence P.
Johnson as clerk. Appellant John Caswell was the State
Veterinarian, and W. L. Williams his assistant.

By said act it is made the duty of the commissioners " to
cause to be investigated any and all cases, or alleged cases,
coming to their knowledge, of contagious or infectious dis-
eases among domestic animals, and to use all proper means to
prevent the spread of such diseases, and to provide for the

extirpation thereof; they are authorized to quarantine all suspected animals, farms or places; and shall have power to order the slaughter of diseased animals."

In December, 1885, the commissioners received information that glanders existed among the horses of appellee upon his farm in Tazewell county, and they immediately took measures to ascertain the character and extent of the disease, and satisfied themselves that four of appellee's horses were diseased with chronic glanders, and that one of the animals, though not diseased, had been exposed to the contagion of the disease. Appellee's premises were placed in quarantine. At different times thereafter efforts were made by the board to slaughter the animals, and several requests were made to appellee to surrender the animals for that purpose. An offer to pay him $75 for the animal not diseased was repeatedly made. Such requests were declined, and on one occasion with a considerable show of force.

On the 29th day of June, 1886, Pearson and McChesney, members of the board, Caswell, the State Veterinarian, Williams, his assistant, and Johnson, the clerk of the board, went to appellee's farm, and after offering to pay for the animals which had been exposed to the disease, the cost of the burial of the animals, and disinfecting the premises, Williams, Caswell and Johnson, acting under the direction of the two members of the board present, killed the animals on the premises, and left them where they fell.

The issues upon which the cause was submitted to the jury were substantially, first, whether the animals killed were diseased with glanders, or had been exposed to it, and secondly, whether appellants exceeded the authority given them by the statute, and used more force and made more noise, etc., than was necessary.

Appellants contend that the court below erred in permitting witnesses for appellee to detail to the jury the symptoms of other diseased horses, which these witnesses supposed were affected with glanders, catarrh, epizootic, nasal gleet and other diseases. One of the witnesses, over objection of appellants, was allowed to give a detailed description of the

action and symptoms of certain horses he had seen slaughtered in the army, which *were said* to have had the glanders. This ruling of the court .we think was erroneous.· No doubt can be entertained that ordinary witnesses, farmers and others, engaged in caring for horses, would be competent witnesses as to diseases of such animals, that had come under their observation and notice sufficiently to give them experience regarding them. But whatever their degree of knowledge upon the subject, whether gained in a veterinary college, or by observation and experience alone, the rules governing the introduction of their evidence are the same. · Both should show first that they have knowledge of the disease under examination, its symptoms, character, results, etc., and this knowledge they may give to the jury, not by detailing the. symptoms of the various cases of disease that may have come under their notice, but the conclusions and opinions they have formed from such experience.

The opposite party may test the value of such opinions by inquiry into the experience and knowledge of such witness.

Counsel for appellee in their brief say :

"The evidence complained of, concerning the disease or appearance of horses not in controversy, was not introduced ·to show that appellee's horses *did not* have the glanders, but to show that the witnesses were experienced and competent observers of the appearance of horses in health and disease, and competent to correctly detail to the jury the *appearance of disease in the horses in controversy*, which, by examination and the exercise of their five senses, they had been enabled to learn. It is not pretended that any of these witnesses testified as to what the disease in appellee's horses was, or expressed any opinion as experts." This statement shows clearly the error of permitting the witnesses to give .the testimony complained of.

The only proper object of calling a witness in such case, and showing that he has a knowledge of certain diseases, would be to have him state whether, in his judgment, the animals in question were affected with the disease, or to describe to the jury the symptoms and effects usually attending such

disease, that they might compare the symptoms thus given with those proven by other witnesses.

We are inclined to think the damages allowed by the jury are excessive. The value of the property destroyed was about $800, while the amount of the verdict was $2,100. .

Very much of the noise and confusion charged upon appellants, was clearly occasioned by appellee, so persistently refusing to allow appellants to discharge their duty in a peaceable and quiet manner. By the opinion of the Supreme Court filed in this case, it is held, that under the pleadings and issues formed, appellee can not question the actions of appellants, unless they exceed the authority given them by the statute, and exercise such powers as are there given them, in an unjustifiable manner.

The seventh refused instruction of appellants, we think, should have been given, for the reason that the jury might have thought the order of two of the commissioners would not have the same effect as though all three were present.

For the errors indicated the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*